**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ROBERT P. DONALDSON, KAREN T. DONALDSON,**
                **Plaintiffs,**

**-vs-**                                **Case No. 6:09-cv-1049-Orl-28GJK**

**UNITED STATES OF AMERICA,**
                **Defendant.**
_____/

## ORDER

Plaintiffs, Robert P. Donaldson ("Mr. Donaldson") and his wife, Karen T. Donaldson ("Mrs. Donaldson"), initiated this lawsuit in a Florida state court in 2008, and it was removed to this Court by the United States on June 18, 2009, (Doc. 1). Plaintiffs seek to recover damages for injuries suffered by Mr. Donaldson in June 2007 in a collision between Mr. Donaldson's bicycle and a van driven by a U.S. Navy lieutenant.

The case is now before the Court on the cross-motions for partial summary judgment filed by Plaintiffs and the United States (Docs. 44 & 47). Having considered the parties' submissions, the Court concludes that Plaintiffs' motion must be denied and that the United States' motion must be granted.

### I. Background

During the summer of 2007, Michael J. Ridge ("Lieutenant Ridge") was a Lieutenant in the U.S. Navy and a member of a baseball team called "the U.S. Military All-Stars," which he and his supervisor describe as a recruiting tool for the military. (Ridge 2008 Dep.[1] at 6-7;

---

[1]There are two depositions of Lieutenant Ridge in the record—one taken on June 20,

Ridge 2010 Dep. at 12; Levins Decl., Ex. 2 to Doc. 47, at 2).[2] The team members paid their own travel expenses, but Lieutenant Ridge was assigned to the baseball team under temporary military orders covering the period May 11, 2007 through August 15, 2007. (Ridge 2008 Dep. at 7; Ridge 2010 Dep. at 12-13; Temporary Additional Duty Orders, Attach. to Ridge 2010 Dep.).[3]

After participating in spring training in Virginia during May 2007, the team traveled around the country to play in games. (Ridge 2008 Dep. at 6; Ridge 2010 Dep. at 14). The team, which had about twenty members, traveled to its games in two rented vans and one pick-up truck owned by one of the team members. (Ridge 2008 Dep. at 10). On June 24, 2007, the day of the incident at issue here, the team was scheduled to leave the central Florida area after a week playing in the Florida Collegiate Summer League. (Id. at 9). Lieutenant Ridge was driving one of the vans, which had been rented from Avis by Lieutenant Commander Terry Allvord, the general manager of the baseball team. (Id. at 10; Ridge 2010 Dep. at 21). Lieutenant Ridge was in charge of this van,[4] and at the time of the

---

2008 and one taken on September 8, 2010. These depositions are cited herein, respectively, as "Ridge 2008 Dep." and "Ridge 2010 Dep."

[2]Lieutenant Ridge joined the Navy in 2001. (Ridge 2008 Dep. at 6). He is no longer in the Navy; he was honorably discharged after seven and a half years. (Ridge 2010 Dep. at 7-8).

[3]Although Lieutenant Ridge had to pay his own travel expenses while on the baseball team, he still was paid his Navy salary during the time that he was playing for the U.S. Military All-Stars. (Ridge 2010 Dep. at 30).

[4]According to Lieutenant Ridge's deposition testimony, Lieutenant Ridge was listed as the primary driver on that rented van and only one other team member was authorized to drive it. (Ridge 2008 Dep. at 37; Ridge 2010 Dep. at 30-31).

incident he was driving, with one passenger, en route to picking up other team members from a hotel[5] in Lake Mary, Florida so that the team could travel to a game later that day in North or South Carolina. (Ridge 2008 Dep. at 11; Ridge 2010 Dep. at 12, 18).

The incident at issue occurred at the intersection of Lake Mary Boulevard and the off-ramp from Interstate 4. Lieutenant Ridge testified in his depositions that he stopped at the red light at the top of the ramp and then started to make a right turn onto eastbound Lake Mary Boulevard. (Id. at 15-19). After checking the four lanes of traffic coming from his left, Lieutenant Ridge took his foot off the brake to go forward to make the right turn; at that point, the van was hit on the front passenger side at a forty-five-degree angle by a bicyclist—Mr. Donaldson. (Id. at 19; Ridge 2010 Dep. at 24).

Plaintiffs filed this lawsuit in state court in Seminole County, Florida, on February 21, 2008, alleging that Mr. Donaldson suffered serious, permanent bodily injuries as a result of the collision between his bicycle and the van being driven by Lieutenant Ridge. In their Amended Complaint—filed on September 29, 2008—Plaintiffs asserted claims against their automobile insurance carrier, Metropolitan Casualty Insurance Company ("Metropolitan") and against Lieutenant Ridge. (Doc. 2). On June 18, 2009, the United States removed the suit to this Court (Notice of Removal, Doc. 1) pursuant to 28 U.S.C. §§ 1442a and 2679(d)(2), which provide for removal of cases involving acts committed by members of the armed forces and employees of the federal government. Attached to the Notice of Removal is a Certification by the United States Attorney that Lieutenant Ridge "was acting within the scope

---

[5]Lieutenant Ridge and his passenger had been staying with a local host family instead of at the hotel. (Ridge 2008 Dep. at 11; Ridge 2010 Dep. at 36-37).

of his employment as an employee of the United States of America at the time of the alleged incident."  (Attach. to Doc. 1).

The United States then filed an Unopposed Motion to Substitute Party (Doc. 7), and the United States was substituted as a Defendant in the place of Lieutenant Ridge, (Order, Doc. 12).  On December 15, 2009, the case was abated pending resolution of administrative claims that Plaintiffs had submitted to the U.S. Navy as required under the Federal Tort Claims Act.  (Order, Doc. 27).  The abatement was lifted on March 3, 2010 after the Court was informed that Plaintiffs' administrative claims had been denied.  (Order, Doc. 34). Shortly thereafter, Plaintiffs dismissed Metropolitan from the case without prejudice.  (Docs. 35 & 38).

The case is now before the Court on the cross-motions for partial summary judgment filed by Plaintiffs (Doc. 44) and the United States (Doc. 47).  In these motions, the parties seek a ruling as to whether Lieutenant Ridge was acting within the course and scope of his employment at the time of the events at issue in this case.  The United States asserts that Lieutenant Ridge was acting within that course and scope, while Plaintiffs assert that he was not.[6]

## II.  Discussion

### A.  Summary Judgment Standards

---

[6] The parties' respective positions on this issue are the opposite of the typical case; as is evident from case law, the United States typically argues *against* a government employee's actions being "within the course and scope," and plaintiffs typically argue *for* such course and scope.  The Court will not speculate as to the reason for the reversal of positions in this case.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations," Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

"Cross motions for summary judgment do not change the standard." Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007). "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'" Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting Buell Cabinet Co. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979)). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts." Id.; accord Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co., 176 F.3d 794, 797 (4th Cir. 1999) ("When considering motions from both parties for summary judgment, the court applies the same standard of review and so may not resolve genuine issues of material fact. Instead, [the court must] consider and rule upon each

party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard.") (citations omitted).

### B. The Merits of the Parties' Motions

Under the Federal Tort Claims Act, the United States can be held liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. This includes liability "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the [United States] while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Id. § 1346(b).

"'Acting within the scope of his office or employment,' in the case of a member of the military or naval forces of the United States . . . means acting in line of duty." Id. § 2671. "'Line of duty,' in turn, draws its meaning from the applicable state law of respondeat superior. . . ." Bennett v. United States, 102 F.3d 486, 489 (11th Cir. 1996); see also Williams v. United States, 352 F.2d 477, 479 (5th Cir. 1965)[7] ("[T]he determination whether a [member of the military] was 'acting in the line of duty' is to be determined by the applicable state rules of respondeat superior.").

"Under Florida's respondeat superior law, an employee is acting within the scope of

---

[7]In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit issued prior to October 1, 1981.

his employment if his conduct: (1) is the kind he is employed to perform; (2) occurs substantially within the time and space limits of the employment; and (3) was activated at least in part by a purpose to serve the master." St. Paul Guardian Ins. Co. v. United States, 117 F. Supp. 2d 1349, 1354 (S.D. Fla. 2000). As set forth below, each of these three requisites is satisfied in this case, and thus Lieutenant Ridge was acting in the scope of employment and in "line of duty" at the time of the events involved in this case.

First, Lieutenant Ridge's driving of the van to pick up and transport players to the baseball team's game was the kind of task he was employed to perform pursuant to his travel orders. As stated in the declaration of Lieutenant Ridge's supervisor, Captain Kenneth C. Levins, Lieutenant Ridge was issued Temporary Additional Duty Orders on May 11, 2007, the purpose of which was a "special mission," and the special mission referred to therein was Lieutenant Ridge's participation on the U.S. Military All-Stars baseball team. (Levins Decl., Ex. 2 to Doc. 47). The mission involved a three-month tour of the United States during the summer of 2007, (id.), during which the incident at issue took place. Lieutenant Ridge was one of two authorized drivers for the rented van that he was driving, and at the time of the incident he was driving the van en route to pick up other team members so that they could then drive to their next scheduled game in another state later that day. Such travel was part and parcel of the "special mission" that Lieutenant Ridge was engaging in pursuant to his temporary duty travel orders. See, e.g., St. Paul Guardian, 117 F. Supp. 2d at 1354-55 (concluding that Naval Reservist was engaged in conduct of type he was hired to perform under Florida law when he was in traffic accident while traveling from his home near Jacksonville, Florida to naval air station in Key West to attend required two-week training

session; Reservist was fulfilling orders by making the trip, even though he did so in his own private automobile); Ashworth v. United States, 772 F. Supp. 1268, 1271-72 (S.D. Fla. 1991) (finding that Coast Guard seaman involved in head-on collision while traveling from one duty station to another in "do-it-yourself" move of his personal belongings was "engaged in conduct of the kind he was employed to perform" because at the time of the collision he was fulfilling orders to report to new duty station).

Second, Lieutenant Ridge's conduct of driving the van occurred "within the time and space limits" of his temporary duty orders. Lieutenant Ridge's travel orders were general and authorized Lieutenant Ridge to "visit such . . . places as may be necessary," and the nature of the special mission was to participate on the traveling military baseball team. At the time of the incident, Lieutenant Ridge was in the process of traveling from one game locale to another, within the time and space limits of his orders. Such travel is akin to travel from one duty station to another, in accordance with orders. Cf. St. Paul Guardian, 117 F. Supp. 2d at 1355 (finding "time and space limits" element satisfied where Naval Reservist was traveling from his home base naval air station to naval air station where two weeks of training was to be conducted, and his travel on day of accident was clearly anticipated and expected by the Navy); Ashworth, 772 F. Supp. at 1272 (time and space limits requirement was met where Coast Guard seaman "was authorized to perform his [do-it-yourself] move and change of duty station at any time after his detachment from" Coast Guard cutter).

Third, Lieutenant Ridge's act of driving the van to pick up the rest of the players so that they could then travel on to the team's next game in another state clearly was activated by a purpose to serve the master. The purpose of picking up the other players was to enable

the team to participate in a scheduled game, in accordance with the "special mission" of playing on the all-star team, which has been described as a recruiting activity for the military—Lieutenant Ridge's master. Cf. St. Paul Guardian, 117 F. Supp. 2d at 1358 (finding third element met because Navy Reservist "was traveling on this date in fulfillment of his orders directing him to report to the Naval Air Station in Key West for his two weeks of annual training"); Ashworth, 772 F. Supp. at 1273 (finding that do-it-yourself move was "activated by purpose to serve the Coast Guard" where move was in fulfillment of orders). Lieutenant Ridge was not, as in the cases cited by Plaintiffs, engaged in personal activity or conduct unrelated to his orders at the time of the incident.

In sum, all three parts of Florida's "scope of employment" test are satisfied in this case.[8] Thus, Lieutenant Ridge was acting "in line of duty" at the time of the collision with Mr.

---

[8]The cases cited by Plaintiffs in which federal employees were found not to be acting within the scope of their employment are distinguishable. See Garcia v. United States, 88 F.3d 318, 319-21 (5th Cir. 1996) (applying Texas law and holding that EPA special agent who had been dispatched from Dallas to Austin for several days was not acting in the scope of his employment when he was involved in an automobile accident late one evening after having several drinks; even if entire trip could be called a "special mission," at the time of the accident the agent was "engaged in a personal deviation"); Montez v. Dep't of the Navy, 265 F. Supp. 2d 750 (N.D. Tex. 2003) (finding, under Texas law, that member of Navy was not acting within the scope of employment while driving a car to a wedding party while off-duty—an act that constituted an unauthorized use of a Navy vehicle), rev'd on other grounds, 392 F.3d 147 (5th Cir. 2004); Melendez Colon v. United States, 56 F. Supp. 2d 147 (D.P.R. 1999) (Navy captain's trip in Navy vehicle to two bars was purely personal and was not intended to serve the Navy); Weaver v. United States Coast Guard, 857 F. Supp. 539 (S.D. Tex. 1994) (intoxicated Coast Guard member who killed three people in a car accident during four-hour leave period allotted for running of personal errands was not acting in the line of duty).

Additionally, the United States correctly notes that another case cited by Plaintiffs—Durant v. Neneman, 884 F.2d 1350 (10th Cir. 1989)—involved the Feres doctrine and examination of whether driving to a duty station was a "military act" for the purpose of that doctrine; it is not helpful here. Plaintiffs cite Durant for the proposition that "merely

Donaldson's bicycle.

### III. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** that Plaintiffs' Motion for Partial Summary Judgment (Doc. 44) is **DENIED** and the United States of America's Cross Motion for Partial Summary Judgment (Doc. 47) is **GRANTED**.

**DONE** and **ORDERED** in Orlando, Florida this 16th day of March, 2011.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

---

driving to the congregation point [of the military all-star team]. . . is not . . . the performance of a military act." (Doc. 44 at 12). As discussed in the text, driving the van from game locale to game locale was an inherent part of Lieutenant Ridge's temporary duty orders and was not equivalent to "merely driving to work."

    Finally, Plaintiffs' argument that the facts of this case are unlike those of Flohr v. Mackovjak, 84 F.3d 386 (11th Cir. 1996), is unavailing. There, the court applied California law to the "scope of employment" issue and found that an Army officer on a week-long temporary duty assignment to attend a conference in California was acting within the scope of his employment when he was involved in a car accident while driving a rental car from a restaurant back to the hotel after dinner. The court noted that the Army had paid all of the officer's expenses, including meals and the cost of renting the automobile, and that "the Army expected [the officer and others] to use the automobile it provided to drive not only to and from the conference but also to a place where they could purchase meals, which were also paid for by the Army." Id. at 391-92. Although in the instant case the baseball team members were responsible for their own travel expenses, as set forth in the text the three elements of the Florida "scope of employment" test are nonetheless satisfied. Lieutenant Ridge was clearly driving the van in furtherance of and pursuant to the "special mission" of the baseball team at the time of the subject incident.