**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ROBERT P. DONALDSON and KAREN T. DONALDSON,**

        **Plaintiffs,**

**-vs-**　　　　　　　　　　　　　　　　　　　**Case No. 6:09-cv-1049-Orl-28GJK**

**UNITED STATES OF AMERICA,**

        **Defendant.**
_____/

# ORDER

This cause is before the Court following a nonjury trial. At the close of Plaintiffs' evidence at that trial, Defendant, the United States of America ("the United States") moved ore tenus, pursuant to Federal Rule of Civil Procedure 52(c),[1] for judgment on partial findings. I reserved ruling on the motion, and the United States then presented the testimony of one witness via deposition and rested its case. I announced at the conclusion of trial that the United States had prevailed and that the findings of fact and conclusions of law required by Rule 52 would be issued. Those findings are set forth herein, and for the reasons stated

---

[1] Rule 52(c) provides:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

below the United States' Rule 52(c) motion is well-taken and must be granted.[2]

## I. Background

This case arises from a collision between a van driven by a former U.S. Navy lieutenant and a bicycle ridden by Plaintiff Robert Donaldson ("Mr. Donaldson"). Mr. Donaldson and his wife, Karen T. Donaldson ("Mrs. Donaldson"), filed this suit in a Florida state court in 2008 against their automobile insurance carrier and the driver of the van, Lieutenant Michael J. Ridge ("Lieutenant Ridge"). The case was removed to this Court on June 18, 2009, and the United States was substituted as a Defendant in place of the Lieutenant Ridge (Docs. 1 & 12). The insurance company was later dismissed by stipulation. (See Docs. 35 & 38).

Prior to trial, the parties filed cross-motions for partial summary judgment on the issue of whether Lieutenant Ridge was acting within the course and scope of his employment at the time of the collision. I ruled that Lieutenant Ridge was acting within that course and scope, (see Order, Doc. 62), and thus the case proceeded to a bench trial as a case brought under the Federal Tort Claims Act ("FTCA"). The issue remaining at trial was whether Lieutenant Ridge acted negligently in operating the van that collided with Mr. Donaldson's bicycle and, relatedly, whether Mr. Donaldson acted negligently in his operation of the bicycle. In its Rule 52(c) motion, the United States argued that Plaintiffs did not meet their burden of establishing negligence on the part of Lieutenant Ridge by a preponderance of the

---

[2] Because Plaintiffs failed to establish their claim during their case-in-chief, this case is appropriately resolved on the United States' Rule 52(c) motion. The result would have been the same had I issued findings from the trial as a whole pursuant to Rule 52(a).

evidence.

## II.  Stipulated Facts

Prior to trial, in the Joint Final Pre-Trial Statement, the parties stipulated to the following facts:

   a.   On the day of the incident, June 24, 2007, Plaintiff Robert Donaldson left his home . . . in Lake Mary, Florida at approximately 7:20 a.m.

   b.   Donaldson was riding his bicycle, a Trek mountain bike.

   c.   Donaldson traveled North from his home to West Lake Mary Blvd.  He crossed W. Lake Mary Blvd., and began traveling in a Westerly direction, with motor vehicle traffic, on the North side of W. Lake Mary Blvd.  At Lake Emma Road, in a sidewalk/bicycle path, Donaldson crossed W. Lake Mary Blvd. and began to travel in a Westerly direction on the sidewalk, along the South side of W. Lake Mary Blvd.  When the sidewalk ended, approximately 200 yards before the accident location, Donaldson began riding his bike on a dirt path approximately 15 feet from the paved road in a Westerly direction.

   d.   The accident location was at the exit ramp from Interstate 4 onto West Lake Mary Blvd.  Ridge, who was driving a white Ford E-350 van[,] was attempting to make a right turn at a red signal light, traveling East on West Lake Mary Blvd.

   e.   Donaldson was attempting to ride his bike in a westerly direction across the exit ramp.

   f.   There was no pedestrian crosswalk where Donaldson was attempting to cross the exit ramp.

   g.   Donaldson did not see the white Ford van until he began to cross the exit ramp, shortly before impact.

(Doc. 58 at 5).

## III.  Trial Evidence

-3-

As explained by Mr. Donaldson at trial and as shown by an aerial photograph (Pls.' Ex. 8)[3] that was introduced into evidence, the exit ramp from eastbound Interstate 4 to Lake Mary Boulevard[4] is a long and wide ramp. At the intersection of the ramp and Lake Mary Boulevard the ramp consists of four lanes—two for traffic turning right onto eastbound Lake Mary Boulevard and two for traffic turning left onto westbound Lake Mary Boulevard.[5]

Mr. Donaldson testified that when he arrived at the intersection—traveling on his bicycle in a westerly direction on a dirt path on the south side of Lake Mary Boulevard—he stopped and assessed the traffic light that was provided for the traffic that was exiting Interstate 4 and approaching Lake Mary Boulevard. It is undisputed that there was no pedestrian signal or crosswalk at this intersection, and it is also undisputed that the traffic light was red for the exiting traffic.

According to Mr. Donaldson, a small silver sedan was stopped in the rightmost lane of the ramp, waiting to make a right turn.[6] Mr. Donaldson testified that he made eye contact

---

[3] This exhibit was initially admitted into evidence without objection from the United States. However, when Mr. Donaldson later referred to a median or triangular area that is not clearly apparent in the photograph, the United States objected that the photograph does not represent the intersection as it existed at the time of the collision. I ruled that I would consider the objection later. Mr. Donaldson insisted that the photograph does accurately depict the lanes and the configuration of the exit ramp, and he did not ever explain the relevance of any median or triangular area to this case in any event. I overrule the United States' objection to the exhibit.

[4] In the area of the intersection, Lake Mary Boulevard is a six-lane road—three lanes in each direction—with a median.

[5] Lieutenant Ridge recalled the ramp consisting of only three lanes, but the Court credits Mr. Donaldson's testimony in this regard, which is consistent with the aerial photograph.

[6] No other witness testified to the presence of this sedan. For the purposes of this

with the driver of that silver sedan to let the driver know he was going to cross, and he then proceeded on his bicycle across that first lane and into the second right turn lane. Once he passed that sedan and that first lane, to his left he "saw a flash of a large vehicle, coming at" him. That large vehicle was the white van driven by Lieutenant Ridge, which was in the second right turn lane on the exit ramp. Mr. Donaldson testified that he never saw the white van other than seeing the "flash."

The van and the bicycle collided,[7] and the next thing that Mr. Donaldson remembered was being in the emergency room. Other testimony at trial established that after the collision, Mr. Donaldson was thrown from the bicycle and landed in the first lane of Lake Mary Boulevard. (See, e.g., Michael Ridge Dep. at 27-28). Mr. Donaldson was briefly unconscious but regained consciousness around the time that law enforcement and emergency personnel arrived on the scene.[8] (See Ridge Dep. at 28). Mr. Donaldson suffered scrapes and bruising on the left side of his face and body, and he also suffered a head injury[9]; testimony presented at trial from Mr. Donaldson's doctor tended to show that

---

Order, I credit Mr. Donaldson's testimony in this regard.

[7]The parties dispute whether the bicycle hit the van or the van hit the bicycle. For purposes of this motion, this factual dispute is not significant. However, the facts that the bicycle was not significantly damaged and that Mr. Donaldson was thrown from the bicycle rather than run over by the van suggest that the bicycle hit the van. Moreover, the passenger in the van, Eric Zimmerman—whose deposition testimony was read during the trial as part of the Government's case—testified that the bicycle impacted the right front quarter panel of the van, immediately in front of where Zimmerman was sitting in the front passenger seat.

[8]Lieutenant Ridge was not issued any kind of citation as a result of the incident. (Ridge Dep. at 29).

[9]It is undisputed that Mr. Donaldson was not wearing a bicycle helmet at the time of

the head injury has resulted in Mr. Donaldson losing his senses of taste and smell.[10]

Lieutenant Ridge, whose videotaped deposition testimony was played during the Plaintiffs' case-in-chief, testified that he stopped at the top of the exit ramp, planning to make a right turn onto eastbound Lake Mary Boulevard. He inched forward and looked to his right and then to his left to check vehicular traffic. Then, when he took his foot off of the brake to begin to move forward and make the turn, the bicyclist—Mr. Donaldson—hit the van. Lieutenant Ridge did not see the bicycle before the collision.

### IV.  Analysis

#### A.  Rule 52(c) Standards

"When ruling on a Rule 52(c) motion, 'the court must weigh the evidence and may consider the witnesses' credibility,' treating the motion 'as if it were a final adjudication at the end of trial . . . .'" JDI Holdings, LLC v. Jet Mgmt., Inc., 732 F. Supp. 2d 1205, 1209 (N.D. Fla. 2010) (quoting Caro-Galvan v. Curtis Richardson, Inc., 993 F.2d 1500, 1504 (11th Cir. 1993)). "Thus, the court resolves the disputed issues on the basis of the preponderance of the evidence, without drawing any special inferences in favor of the plaintiff."[11] Id.

---

the collision. Subsection 316.2065(19), Florida Statutes (2006), provides: "The failure of a person to wear a bicycle helmet . . . may not be considered evidence of negligence or contributory negligence." In accordance with this statutory provision, Mr. Donaldson's failure to wear a helmet has not been considered.

[10]Mr. Donaldson also complained of a resulting hearing impairment in his right ear, but his doctor did not connect any such loss to the head injury suffered in the collision.

[11]In light of these legal standards, the arguments of Plaintiffs' counsel in response to the Rule 52(c) motion that "there are fact issues" and that Plaintiffs "made a prima facie case" are off the mark. Because this was a nonjury trial, I am the finder of fact, and the issue on a Rule 52(c) motion is whether Plaintiffs proved their claim during their case-in-chief.

B. Application

Plaintiffs contend that Lieutenant Ridge was negligent in "failing to maintain a proper lookout" before making a right turn at a red traffic signal. However, Plaintiffs did not meet their burden of establishing by a preponderance of the evidence that Lieutenant Ridge acted negligently in his operation of the van.

Lieutenant Ridge credibly testified that after stopping at the top of the ramp, he looked to his right and then to his left—from which traffic was flowing on eastbound Lake Mary Boulevard—before beginning to proceed forward to make a right turn onto eastbound Lake Mary Boulevard. Additionally, the aerial photograph and the sequence of events as recounted by Mr. Donaldson himself indicate that Lieutenant Ridge would not have seen Mr. Donaldson because Mr. Donaldson was crossing in front of a silver sedan in the next lane, where the stop line—angled slightly as would be a right-turning vehicle—is slightly forward of the also-angled stop line in Lieutenant Ridge's lane. Plaintiffs did not establish that Lieutenant Ridge failed to exercise due care in making a right turn on red.

While there is no evidence that Lieutenant Ridge failed to use due care, the same cannot be said of Mr. Donaldson. There was no explanation presented at trial for why Mr. Donaldson did not see the white van—or, for that matter, why he did not look for it or other traffic—before proceeding across the second lane of the exit ramp. Mr. Donaldson acknowledged that he had a clear view of the exit ramp before he began to cross and that it was a clear, sunny morning. He also testified that the small sedan in the first lane would

---

Weighing of evidence and resolution of fact issues are entirely appropriate on such a motion.

not have inhibited his view of the much larger white van.

Plaintiffs argue that Mr. Donaldson was entitled to rely on the red light that the exiting traffic faced and to begin to pedal across. However, Mr. Donaldson clearly knows that cars are permitted under the law to make right turns on red. Indeed, that understanding is undoubtedly what led him to, as he testified, make eye contact with the driver of the silver sedan in the first, rightmost lane to ensure that the driver knew he was about to cross the ramp. Nevertheless, Mr. Donaldson proceeded into the next lane without looking, whereupon he and the van collided. Based on the evidence presented, I conclude that Mr. Donaldson's negligence[12]—not that of Lieutenant Ridge—solely caused the collision.

---

[12]In describing Mr. Donaldson's rights and duties in crossing the exit ramp, both parties have characterized him as having the rights and duties of a pedestrian, noting that section 316.2065, Florida Statutes (2006), titled "Bicycle regulations," provides in part that "[a] person propelling a vehicle by human power upon and along a sidewalk, or across a roadway upon and along a crosswalk, has all the rights and duties applicable to a pedestrian under the same circumstances." Id. § 316.2065(10). Although the parties have stipulated that there was no crosswalk at the subject intersection, analysis of Mr. Donaldson as a pedestrian nevertheless is apt, especially in light of the agreement of the parties in this regard.

Section 316.130, Florida Statutes (2006), titled "Pedestrian obedience to traffic control devices and traffic regulations," provides, as the title suggests, the duties of pedestrians. This section provides in part that "[n]o pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield," and that "[e]very pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway. Id. § 316.130(8) & (10). In proceeding as he did into the second lane of the exit ramp, Mr. Donaldson violated both of these subsections.

Moreover, Mr. Donaldson acknowledged that in crossing the ramp, he was riding his bicycle against the direction of vehicular traffic. This is contrary to section 316.2065(5)(a), Florida Statutes (2006), which provides—with exceptions not established to be applicable in this case—that "[a]ny person operating a bicycle upon a roadway at less than the normal speed of traffic at the time and place and under the conditions then existing shall ride in the lane marked for bicycle use or, if no lane is marked for bicycle use, as close as practicable to the right-hand curb or edge of the roadway." Mr. Donaldson testified that he had crossed

V.  Conclusion

In accordance with the foregoing, the United States' ore tenus Motion for Judgment on Partial Findings is **GRANTED**.  Plaintiffs failed to establish that Lieutenant Ridge was negligent in his operation of the van at the time of the collision at issue.  Thus, it is **ORDERED** that the Clerk shall enter a judgment providing that Plaintiffs shall take nothing on their claim against the United States.  Thereafter, the Clerk shall close this file.

**DONE** and **ORDERED** in Orlando, Florida this 23rd day of May, 2011.

*[signature]*
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

---

Lake Mary Boulevard from north to south just prior to the collision because he felt it was safer for him to proceed westbound from that point against traffic rather than with it due to the on-ramps to Interstate 4 in the westbound travel lanes of Lake Mary Boulevard. However, his assessment that the south side of the road was "safer" for his westbound path of travel does not diminish his obligation to use due care in crossing the exit ramp, nor does it increase the duty of care owed by Lieutenant Ridge or other drivers.